IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                    Plaintiff

          -v-


David A. Pickard
Rochester, NY 14624

Julie K. Pickard
Churchville, NY 14428


HSBC Mortgage Corporation (USA)
2929 Walden Avenue
Depew, NY 14043

County of Monroe
Dept of Planning and Development
50 West Main St., 8100
Rochester, NY 14614

New York State Department
of Taxation and Finance CO-ATC

JOHN DOE, MARY ROE AND XYZ
CORPORATION,
206 Palmer Road
Riga, New York 14428


                    Defendants

Civil No.:   _____

COMPLAINT - ACTION TO
FORECLOSE A MORTGAGE

---

     The United States of America, a Sovereign, by Forsyth, Howe,

O'Dwyer, Kalb & Murphy, P.C., Attorneys for the plaintiff, complains

and alleges as follows:

1.   This Court has jurisdiction under the provisions of Title 28, United States Code, Section 1345.

2.   On or about 10/13/2000, at the request of the defendant, David A. Pickard, Julie K. Pickard, (hereinafter referred to as the "Debtor"), the plaintiff, the United States of America, acting by and through its agency, Farmers Home Administration, n/k/a Rural Housing Service, did lend to the Debtor, the sum of $91,600.00, which sum the Debtor did undertake and promise to repay, with interest at 6.875% in specified monthly installments.

3.   As evidence of the indebtedness, the Debtor, did execute and deliver to the plaintiff a Promissory Note dated 10/13/2000, a true copy of which is attached as Exhibit "A".

4.   In order to secure the payment of the indebtedness the Debtor, did execute, acknowledge and deliver to the plaintiff, a real property mortgage dated 10/13/2000, a true copy of which is attached as Exhibit "B".

5   The mortgage was duly recorded on 10/16/2000 in the Monroe County Clerk's Office in Liber 15091 of Mortgages at Page 688.

6.    Plaintiff is now the owner and holder of the Promissory Note and Mortgage.

7. The Debtor has breached and violated the provisions of the Promissory Note and Mortgage in that he did neglect and fail to pay the installments of principal and interest when due, despite due demand therefore and by failing to make payment of real property taxes when due, thus making it necessary for the plaintiff to pay the same to protect its interest.

8. By reason of the defaults described herein, plaintiff has elected to declare the entire sums secured by the mortgage to be due and payable.

9. There is now justly due and payable to the plaintiff, as of 8/11/2010, on the Promissory Note and Mortgage the following sums:

| | |
|---|---|
| Unpaid Principal (Note) | $89,415.37 |
| Unpaid Interest (Note) | $16,875.63 |
| Unpaid Principal (Advances) | $8,153.83 |
| Unpaid Interest (Advances) | $357.88 |
| Late Charges | $74.28 |
| Total | $114,576.88 |

together with interest at the rate of 6.875% per annum on principal and all advances from 8/11/2010.

12.   Upon information and belief, plaintiff may be compelled to make additional advances for payment of taxes, hazard insurance water and sewer charges, or other municipal assessments maintenance, in order that it may protect and preserve security, but the nature and amount thereof is unknown to plaintiff at this time. Nevertheless, plaintiff seeks recovery thereof and therefore, together with interest thereon.

13. No other action or proceeding has been brought at law or otherwise for the recovery of said sums secured by the Promissory Note and Mortgage, or any part thereof.

14. The defendants, HSBC Mortgage Corporation (USA), County of Monroe, New York State Department of Taxation and Finance CO-ATC, as set forth in Exhibit "C" have or may claim to have some interest in, or lien upon the mortgaged premises or some part thereof, which interest or lien, if any accrued subsequently to the lien of the United States mortgage and is subsequent thereto.

15.   That a copy of the Notice to the mortgagor required pursuant to New York State Real Property Actions and Proceedings Law section 1303 is attached hereto and made a part hereof as Exhibit "D".

16.   That the plaintiff has complied with the notice provisions of New York State Real Property Actions and Proceedings Law Section 1304.   A copy of the required notice is attached hereto as Exhibit "E".


17. The true names of the defendants John Doe, Mary Roe and XYZ Corporation are unknown to the United States, those names being fictitious, but intending to designate tenants, occupants or other persons, if any, having or claiming any estate or interest in possession upon the premises or any portion thereof.


18.   At the time this proceeding was commenced, the plaintiff has complied with the provisions of New York State Real Property Actions and Proceedings Law Section 1306 regarding filing with th Superintendent of the New York State Banking Department.   A copy of the required filing is attached hereto as Exhibit "F".


WHEREFORE, plaintiff demands judgment:


(a) That the defendants, or either or any of them, subsequent to the filing of the Notice of Pendency of this action, and every person whose conveyance or encumbrance is subsequent or subsequently recorded, be forever barred and foreclosed of all right, claim, lien and equity of redemption in the mortgaged premises;


(b) That the premises may be decreed to be sold according to law;

(c)   That the amount due to the plaintiff on the promissory note and mortgage may be adjudged;

(d) That the moneys arising from the sale may be brought into Court;

(e) That the plaintiff may be paid the amount adjudged to be due to the plaintiff with interest thereon to the time of such payment, together with the costs and expenses of this action and the expenses of the sale, so far as the amount of such money properly applicable thereto will pay the same;

(f)   And that the plaintiff may have such other and further relief as may be just and equitable.

DATED:      Rochester, New York   August 20, 2010

S/Gerald N. Murphy

FORSYTH, HOWE, O'DWYER,
KALB & MURPHY, P.C.
One Chase Square, Suite 1900
Rochester, NY  14604
(585) 325-7515
Fax:  (585) 325-6287
Email:  Murphy@forsythhowe.com

**EXHIBIT A**

USDA-RHS
Form FmHA 1940-16
(Rev. 10-96)

# PROMISSORY NOTE

Type of Loan SECTION 502

Loan No [redacted]

Date:  October 13  ,  2000

206 Palmer Road
(Property Address)

Churchville        ,  Monroe        ,  New York
(City or Town)        (County)        (State)

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors)("Government") $ 91,600.00 (this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of 6.875 %. The interest rate required by this section is the rate I will pay both before and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below:

☐ I.  Principal and interest payments shall be temporarily deferred.  The interest accrued to _____ , _____ shall be added to the principal.  The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below.  I authorize the Government to enter the amount of such new principal here: $_____ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

☒ II.  Payments shall not be deferred.  I agree to pay principal and interest in 396 installments as indicated in the box below.

> I will pay principal and interest by making a payment every month.
> I will make my monthly payment on the 13th day of each month beginning on November 13, 2000 and continuing for 395 months.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on October 13 ,2033 , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
> My monthly payment will be $ 585.78 . I will make my monthly payment at the post office address noted on my billing statement or a different place if required by the Government.

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below.  I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note.  This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

1

LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of 15 days after the date it is due, I will pay a late charge. The amount of the charge will be 2.000 percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

NOTICES.  Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address.  Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at <u>USDA / Rural Housing Service, c/o Customer Service Branch, P.O. Box 66889, St. Louis, MO 63166</u> , or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE.  If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things.  The Government may enforce its rights under this note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS.  I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require the Government to demand payment of amounts due.  "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING:  Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

| _Julie K. Pickard_ Seal | _____ Seal |
|---|---|
| Borrower | Borrower |
| _David Akin_ Seal | _____ Seal |
| Borrower | Borrower |

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL  $ | |

A reamortization agreement dated August 13, 2003 in the principal sum of $94,396.95 has been given to modify the payment schedule of this note.

Account # 

3

**EXHIBIT B**



MONROE COUNTY CLERK'S OFFICE
County Clerk's Recording Page

**Index**   MORTGAGES

Return To:

    BOX 210

DEC 0 6 2000

**Book**   15091   **Page**   0688

**No. Pages**   0008

**Instrument**   MTG-TAX EXEMPT

**Date :**   10/16/2000

**Time :**   1:19:00

**Control #**   200010160557

PICKARD
DAVID         A
PICKARD
JULIE         K
UNITED STATES OF AMERICA

**MTG#**    M# CR   018307

**Employee ID BC**

                     **MORTGAGE TAX**

| | | |
|---|---|---|
| FILE FEE-S | $ | 4.75 |
| FILE FEE-C | $ | 10.25 |
| REC FEE | $ | 24.00 |
| | $ | .00 |
| MISC FEE-C | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| | $ | .00 |
| Total: | $ | 39.00 |

| | | |
|---|---|---|
| MORTGAGE AMOUNT | $ | 91,600.00 |
| BASIC MORTGAGE TAX | $ | .00 |
| SPEC ADDIT MTG TAX | $ | .00 |
| ADDITIONAL MTG TAX | $ | .00 |
| Total | $ | .00 |

STATE OF NEW YORK
MONROE COUNTY CLERK'S OFFICE

WARNING - THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH.

      Maggie Brooks, County Clerk

                     **TRANSFER AMT**

| | | |
|---|---|---|
| TRANSFER AMT | $ | .00 |
| TRANSFER TAX | $ | .00 |



M150910688

[Space Above This Line For Recording Data]

Form RD 3550-14 NY                                      Form Approved
(Rev. 7-98)                                             OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR NEW YORK

THIS MORTGAGE ("Security Instrument") is made on  October 13  AJP 2000 . [Date]
The mortgagor is     DAVID A. PICKARD and JULIE K. PICKARD
                                                            ("Borrower").
 This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| 10/13/2000 | $91,600.00 | 10/13/2033 |

This Security Instrument secures to Lender:  (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a.  For this purpose, Borrower irrevocably grants and conveys to Lender the following described property located in the County of

 Monroe                                    , State of New York:

See Schedule A attached hereto and made a part hereof.

The premises herein are improved by a one or two family dwelling only.

Tax account #:  156.04-2-9

which has the address of   206 Palmer Road, Churchville            , New York  14428
                          [Street]                        [City]              [ZIP]

("Property Address");

According to the Paperwork Reduction Act of 1996, no persons are required to respond to a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this collection is 0575-0172.  The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Page 2 of 6

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the Property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Lender fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so. Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8.  Refinancing.**  If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

**9.  Inspection.**  Lender or its agent may make reasonable entries upon and inspections of the Property.  Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.  In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower.  In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking.  Any balance shall be paid to Borrower.  In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11.  Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.  Successors and Assigns Bound; Joint and Several Liability; Co-signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16.  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.  Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14.  Governing Law; Severability.**  This Security Instrument shall be governed by federal law.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.  This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof.  All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15.  Borrower's Copy.**  Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16.  Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this

Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be decreed incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

**23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

**24.** Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c)

prescribing any other statue of limitations, (d) allowing any right of possession or, (e) limiting the conditions which Lender may be regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower.  Borrower expressly waives the benefit of any such state law.  Borrower hereby relinquishes, waives, and conveys all rights,  inchoate or consummate, of descent.

**25.  Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.  [Check applicable box]

[] Condominium Rider     [] Planned Unit Development Rider     [] Other(s) [specify}

Witnesses:

_____         _____ (Seal)
                                                        Borrower
                                          DAVID A. PICKARD

_____         _____ (Seal)
                                                        Borrower
                                          JULIE K. PICKARD

## ACKNOWLEDGMENT

STATE OF NEW YORK        }
                         } SS:
COUNTY OF  MONROE        }

On the   13th  day of   October     in the year 2000 , before me, the undersigned, a notary public in and for said State, personally appeared  DAVID A. PICKARD and  , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose names(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person on behalf of which the individual(s) acted, executed the instrument.

_____
                                          Notary Public

JUDITH A. MORRISON
Notary Public is the State of New York
MONROE COUNTY
Commission Expires  12/31/01

Page 6 of 6

## SCHEDULE A

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Riga, County of Monroe and State of New York, being Lot No. 3 of "Palmer Meadows" as shown on a map of said subdivision made by Henry E. Roberts as revised on June 28, 1968 and filed in the Monroe County Clerk's Office in Liber 180 of Maps, page 25.

Said lot is situate on the east side of Palmer Road and is 100.00 feet front and rear and 300.29 feet deep.

**EXHIBIT C**

2.  David A. Pickard and Julie K. Pickard

                    -To-

United States of America acting
through the Rural Housing Service or
successor agency, United States
Department of Agriculture
Rural Housing Services c/o
Centralized Servicing Center
United States Department of
Agriculture
P.O. Box 66889
St. Louis, MI

       Covers:  Same premises as No. 1.

Purchase Money Mortgage to secure:
$91,600.00

Dated:  October 13, 2000
Ack.:   October 13, 2000
Rec.:   October 16, 2000
Book 15091  of Mortgages, at Page 688
Mortgage No. CR018307

---

3.  David A. Pickard and Julie K. Pickard

                    -To-

HSBC Mortgage Corporation (USA)
2929 Walden Avenue
Depew, NY

       Covers:  Same premises as No. 1.

Purchase Money Mortgage to secure:
$7,500.00

Dated:  October 13, 2000
Ack.:   October 13, 2000
Rec.:   October 16, 2000
Book  15091 of Mortgages, at Page 696
Mortgage No. CR018308

4.  David A. Pickard and Julie K. Pickard          Mortgage to secure: $1,900.00

                                                    Dated:  October 2, 2000
                                                    Ack.:   October 2, 2000
                         -To-                       Rec.:   March 27, 2001
                                                    Book  15284 of Mortgages, at Page 165
                                                    Mortgage No. CR030886

    County of Monroe

        Covers:  Tax Block Number 156.040-0002-09.

_____

5.  David A. Pickard and Julie K. Pickard          Mortgage to secure: $7,500.00

                                                    Dated:  November 3, 2005
                                                    Ack.:   November 3, 2005
                         -To-                       Rec.:   February 3, 2006
                                                    Book  20279 of Mortgages, at Page 191
                                                    Mortgage No. CW037242

    County of Monroe

        Covers:  Tax Block Number 156.040-0002-09.

_____

6.      New York State Department of               State Tax Warrant
        of Taxation and Finance
        Civil Enforcement-CO-ATC
        WA Harriman State Campus
        Albany, NY
                                                    Index No.: B2010014409
                         -Vs.-                      Control No. 201006220616
                                                    Article: 22  Tax Law
        David A. Pickard and/or                     Amount: $170.69
        Julie K. Pickard                            Filed:  June 22, 2010
        206 Palmer Road
        Churchville, NY                             Attorney:  State Tax Commissioner

_____

**EXHIBIT D**

# Help for Homeowners in Foreclosure

New York State Law requires that we send you this notice about the foreclosure process. Please read it carefully.

## Summons and Complaint

You are in danger of losing your home. If you fail to respond to the summons and complaint in this foreclosure action, you may lose your home. Please read the summons and complaint carefully. You should immediately contact an attorney or your local legal aid office to obtain advice on how to protect yourself.

## Sources of Information and Assistance

The State encourages you to become informed about your options in foreclosure. In addition to seeking assistance from an attorney or legal aid office, there are government agencies and non-profit organizations that you may contact for information about possible options, including trying to work with your lender during this process.

To locate an entity near you, you may call the toll-free helpline maintained by the New York State Banking Department at 1-877-BANKNYS (1-877-226-5697) or visit the Department's website at www.banking.state.ny.us.

## Foreclosure Rescue Scams

Be careful of people who approach you with offers to "save" your home. There are individuals who watch for notices of foreclosure actions in order to unfairly profit from a homeowner's distress. You should be extremely careful about any such promises and any suggestions that you pay them a fee or sign over your deed. State law requires anyone offering such services for profit to enter into a contract which fully describes the services they will perform and fees they will charge, and which prohibits them from taking any money from you until they have completed all such promised services.

**EXHIBIT E**

**David and Julie Pickard**
**206 Palmer Road**
**Churchville, New York 14428**

**March 26, 2010**

## YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE CAREFULLY

As of March 26, 2010, your home loan is 834 days in default.  Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.  You can cure this default by making the payment of $25,669.05 dollars by April 26, 2010.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home.  Attached to this notice is a list of government approved housing counseling agencies in your area which provide free or very low-cost counseling.  You should consider contacting one of these agencies immediately.  These agencies specialize in helping homeowners who are facing financial difficulty.  Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance.  If you wish, you may also contact us directly at 315-477-6423 or 315-477-6416 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution.  The longer you wait, the fewer options you may have.

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Banking Department's toll-free helpline at 1-877-BANK-NYS (1-877-226-5697) or visit the Department's website at http://www.banking.state.ny.us.

**David and Julie Pickard**
**34 Brookview Road**
**Rochester, New York 14624**

**March 26, 2010**

## YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING
## NOTICE CAREFULLY

As of March 26, 2010, your home loan is 834 days in default.  Under New York
State Law, we are required to send you this notice to inform you that you are at
risk of losing your home.  You can cure this default by making the payment of
$25,669.05 dollars by April 26, 2010.

If you are experiencing financial difficulty, you should know that there are several
options available to you that may help you keep your home.  Attached to this
notice is a list of government approved housing counseling agencies in your area
which provide free or very low-cost counseling.  You should consider contacting
one of these agencies immediately.  These agencies specialize in helping
homeowners who are facing financial difficulty.  Housing counselors can help you
assess your financial condition and work with us to explore the possibility of
modifying your loan, establishing an easier payment plan for you, or even working
out a period of loan forbearance.  If you wish, you may also contact us directly at
315-477-6423 or 315-477-6416 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we
encourage you to take immediate steps to try to achieve a resolution.  The longer
you wait, the fewer options you may have.

If this matter is not resolved within 90 days from the date this notice was mailed,
we may commence legal action against you (or sooner if you cease to live in the
dwelling as your primary residence.)

If you need further information, please call the New York State Banking
Department's toll-free helpline at 1-877-BANK-NYS (1-877-226-5697) or visit the
Department's website at http://www.banking.state.ny.us.

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent ☐ Addressee<br>B. Received by ( Printed Name) | C. Date of Delivery |

1. Article Addressed to:

David + Julie Pickard
34 Brookview Rd
Rochester NY 14624

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

ROCHESTER NY 14624

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
   *(Transfer from service label)*    7009 3410 0002 2284 8385

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**EXHIBIT F**



**New York State Banking Department**
**Step A - Loan Subject to Pre-Foreclosure Notice**

*NYS33696*
TRACKING NUMBER

*Banking Department use only. To be left blank except when re-filing*
*Step 1 to provide missing information as requested by Department.*

### 1. Filing Information

| | | |
|---|---|---|
| (a) E-mail address (filing receipt will be sent to this address): | charles.cross@ny.usda.gov | |
| (b) Additional e-mail address for queries:* | Kathleen.McLaggan@ny.usda.gov | |
| (c) Is this loan on a primary residence at time of default? | ☑ Yes | ☐ No |
| *If you responded NO, please do not complete or file this form* | | |
| (d) Date of mailing of Pre-Foreclosure Notice | (mm/dd/yyyy): 03/26/2010 | |

### 2. Servicer Information *(loss mitigation contact)*

| | | | |
|---|---|---|---|
| Name: | USDA Rural Development | | |
| Address: | Street (or P.O. box): 441 South Salina St Ste 357 | | |
| | City: Syracuse | State: NY | Zip: 13202 - |
| Telephone number: | (315) 477-6423 | | |
| E-mail address:* | Kathleen.Mclaggan@ny.usda.gov | | |

### 3. Property Information

| | | | | |
|---|---|---|---|---|
| Address: | Street: 206 Palmer Road | | | |
| | City: Churchville | County: Monroe | State: NY | Zip: 14428 - |
| Type of property | Choose one: 1 to 4 family home | If Other, please specify: | | |

### 4. Borrower Information

| | | | |
|---|---|---|---|
| Name: | Last: Pickard | First: David | |
| Address: | Street: 34 Brookview Road | | |
| | City: Rochester | State: NY | Zip: 14624 - |
| Telephone number: | Daytime: (585) 293-3444 | Alternative number:* (585) 352-9700 | |
| E-mail address:* | | | |
| *If there is a second name on the loan, please provide contact information below:** | | | |
| Name: | Last: Pickard | First: Julie | |
| Address: | Street: 34 Brookview Road | | |
| | City: Rochester | State: NY | Zip: 14624 - |
| Telephone number: | Daytime: (585) 293-3444 | Alternative number: (585) 352-9700 | |
| E-mail address:* | | | |

### 5. Loan Details

| | | | |
|---|---|---|---|
| Loan Number:* | 17062632 | | |
| (a) Date of original loan: | (mm/md/yyyy): 10/13/2000 | (b) Amount of original loan: | $ 91,600 |
| (c) Has the loan been modified in the past 12 months? | ☐ Yes | ☑ No | |
| If yes: | HAMP modification: | Yes | Non-HAMP modification: | Yes |
| (d) Type of loan | Choose one: 1st Lien | If Other, please specify: | |

| 5. Loan Details (continued) | | | | |
|---|---|---|---|---|
| (e) Loan detail | Choose one: Fixed rate | | | |
| | **If Adjustable Rate or Payment Option Adjustable Rate loan** | | Frequency of reset: Choose one: Annual | |
| (f) Loan term | Choose one: Other | If Other, please specify: 33 years | | |
| (g) Interest rate | Current rate: 6.875 | | | |
| (h) Amount due and owing to bring the loan current | | | | |
| | Delinquent contractual payment: | $ 17,701 | | |
| | Late fees: | $ 74 | | |
| | Other: | $ 7,894 | | |
| | **Total to bring loan current:** | $ 25,669 | | |
| (i) Current monthly payments: | $ 935 | | | |
| (j) Does payment include escrow for taxes, insurance or PMI? | | ■ Yes | ☐ No | |
| (k) How long has loan been delinquent? | Choose one: More than 120 days | | | |
| (l) Is loan investor owned? | ☐ Yes | ■ No | | |

\* Field is not mandatory. Information should be provided if readily available.



SUBMIT FORM TO THE
BANKING DEPARTMENT
(CLICK HERE WHEN FORM IS COMPLETE)

VERIFICATION

STATE OF NEW YORK   )
                    )          ss:
COUNTY OF MONROE    )

Gerald N. Murphy, being duly sworn, deposes and says:

1.   I am an Attorney duly admitted to practice in the Federal Courts of the Western District of the State of New York and have read the foregoing Complaint.

2.  The allegations of the Complaint are true, except those matters alleged-on information and belief, and those matters I believe to be true. The grounds of my knowledge and the sources of my information and belief are records of the Rural Housing Service, formerly known as the Farmers Home Administration and public records.

3.   This verification is made by me and not by plaintiff because the United States of America is a sovereign.

S/Gerald N. Murphy

FORSYTH, HOWE, O'DWYER,
KALB & MURPHY, P.C.
One Chase Square, Suite 1900
Rochester, NY 14604
(585) 325-7515
Fax: (585) 325-6287
Email: Murphy@forsythhowe.com

Sworn to and subscribed before on:
August 20, 2010

Notary Public

JODI L. FLANDERS
Notary Public, State of New York
Monroe County, Reg #01FL6196815
My Commission Expires November 17, 2012